# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| MICHAEL PACE,<br>                    Appellant, | DOCKET NUMBER<br>CH-0432-14-0335-I-1 |
|                    v. | |
| DEPARTMENT OF THE ARMY,<br>                    Agency. | DATE: June 11, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Stephen T. Fieweger, Esquire, Moline, Illinois, for the appellant.

Karen Barrows, Rock Island, Illinois, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which sustained his removal and found that he had not established his affirmative defenses. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision as to the penalty of removal. The appellant's removal is NOT SUSTAINED. We AFFIRM AS MODIFIED by this

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

Order the initial decision as to its finding that the appellant failed to establish his affirmative defenses.

## BACKGROUND

¶2    The appellant, a safety intern, was placed on a Performance Improvement Plan (PIP). Initial Appeal File (IAF), Tab 7, Subtab 4 at 4-24 of 98.[2] After the PIP concluded, the appellant's performance in the critical element of mission support continued to be evaluated as "Fails" and he received an overall "Unsuccessful" rating on his final performance evaluation. *Id*. at 92-95 of 102. The appellant therefore was removed from his position for unsuccessful performance. *Id*. at 10-20 of 136.

¶3    The appellant appealed his removal to the Board. IAF, Tab 1. After holding a hearing, the administrative judge sustained the removal, finding that: the PIP memorandum provided objective milestones that the appellant needed to reach before he was deemed "Fully Successful"; there was sufficient evidence to demonstrate that the appellant failed to meet the mission support objective; and there was substantial evidence to sustain his removal. IAF, Tab 14, Initial Decision (ID) at 7-10. The administrative judge also found that the appellant failed to establish his affirmative defenses of harmful procedural error and disability discrimination in the form of failure to accommodate and disparate treatment. ID at 11-17. The appellant has filed a timely petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

---

[2] The agency filed Subtab 4 of Tab 7 in three separate submissions consisting of 98, 102, and 136 pages, respectively. Throughout this decision, we cite to both the specific page number and the last page number of the particular submission in Subtab 4 to which we are referring.

**DISCUSSION OF ARGUMENTS ON REVIEW**

Validity and Communication of Performance Standards

¶4        In a performance-based action under chapter 43, an agency must establish by substantial evidence[3] that:  (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013). Performance standards are not valid unless they set forth a minimum level of performance that an employee must achieve to avoid a performance-based action. *Henderson v. National Aeronautics & Space Administration*, 116 M.S.P.R. 96, ¶ 9 (2011).  Under certain performance appraisal systems, performance of a critical element may fall between "Fully Successful" and "Unacceptable."  5 C.F.R. §§ 430.207(c), 430.208(d).  However, under such systems, only the lowest rating level of "Unacceptable" (or its equivalent) will support an agency action under chapter 43.  *See Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 14 (2011), *aff'd*, 484 F. App'x 489 (Fed. Cir. 2012).

¶5        We find that the agency failed to show by substantial evidence that the appellant's performance standards were valid and that he was notified of the standard for performing at the minimum acceptable level to avoid a performance-based action.  The agency's Total Army Performance Evaluation System, under which the appellant was evaluated, provides for a four-tiered system for measuring each individual objective with the standards of

---

[3] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  5 C.F.R. § 1201.4(p).

"Excellence," "Success," "Needs Improvement," and "Fails." Army Regulation 690-400, Chapter 4302, 1-5.g. (1998). An "Unsuccessful" rating is assigned for an employee who receives a rating of "Fails" in one or more objective, regardless of the ratings assigned to other objectives. *Id*., 1-5.i. The appellant's performance objectives are written at one level and do not provide for varying levels of performance. IAF, Tab 7, Subtab 4 at 67-68 of 98. Thus, the agency stated in its narrative response that these standards are written at the "Fully Successful" level. *Id*., Subtab 1 at 18; *see id*., Subtab 4 at 26 of 98, PIP (performance standards are written at the "Fully Successful" level). We therefore find that the standards are invalid.

¶6        Although, to be valid, performance standards must set forth the minimum level required to avoid a performance-based action, an agency may cure invalid performance standards by communicating sufficient information regarding performance requirements at the beginning of, and even during, a PIP. *Henderson*, 116 M.S.P.R. 96, ¶¶ 16, 18. We find that the agency failed to cure its defective standards because it did not communicate to the appellant that he only needed to improve to the "Needs Improvement" level and it did not sufficiently describe how he could improve his performance to avoid a performance-based action.

¶7        Prior to the PIP, the appellant received an intern midpoint performance report. IAF, Tab 7, Subtab 4 at 58-63 of 98. In this report, the proposing official provided examples of the appellant's performance, described what was deficient, and explained what he expected for the appellant to perform successfully as measured by the objectives. *Id*. at 59-60 of 98. The report did not describe what was required to receive a "Needs Improvement" rating. *Id*. at 60 of 98. Instead, it stated that the appellant needed "to improve performance to avoid an unsuccessful rating for each of [his] performance objectives" and then described what the proposing official expected of the appellant to successfully perform. *Id*. Nowhere does the report indicate that the appellant may perform at the "Needs

Improvement" level to avoid an "Unsuccessful" rating, nor does it describe the "Needs Improvement" level of performance. Therefore, we find that the report does not cure the defective performance standards. *See Henderson*, <u>116 M.S.P.R. 96</u>, ¶¶ 20-21 (the agency failed to cure its invalid written performance standards because it did not communicate valid performance standards to the appellant during the initial performance period).

¶8 The appellant subsequently was placed on a PIP. IAF, Tab 7, Subtab 4 at 26-55 of 98. In its PIP notice, the agency stated, "An acceptable level of performance is that which meets your performance requirements at the successful level . . . ." *Id*. at 26 of 98. It also noted that performance standards are written at the "Fully Successful" level. *Id*. The agency stated that the appellant was failing two performance objectives/critical elements: mission support and organizational support. *Id*. at 29 of 98. The PIP notice included the language of the performance standard concerning mission support. *Id*. at 29-30 of 98. The PIP notice very specifically detailed instances where the appellant had not properly performed as to the mission support objective and explained how he could successfully perform in those situations. *Id*. at 29-45 of 98. The notice also generally outlined how the appellant could perform more successfully during the PIP, including, under the mission support objective, having no more than one instance where the Occupational Safety and Health Administration (OSHA) 300 log is not updated monthly by the established date and/or not updated within 4 working days of a reportable accident. *Id*. at 51-53 of 98. The appellant also was required to meet five expectations in the mission support objective with three or fewer cumulative errors. *Id*. at 51 of 98. These expectations included meeting suspense dates. *Id*. at 52.

¶9 It is clear from the PIP notice that the agency did not notify the appellant of the performance level required for a "Needs Improvement" rating. First, the PIP notice clearly states that it is written at the "Success" level as opposed to any lower level. *Id*. at 26 of 98. Additionally, many of the standards in the PIP are

clearly on the same level as the appellant's performance standards, which were written at the "Success" level. For example, under the mission support objective, the appellant's performance standards for a 1-year performance period state that he must maintain the OSHA 300 log accurately and within 4 working days of occurrence with no more than two instances where the log is not maintained accurately or within 4 working days. *Id*. at 67 of 98. In the PIP, which lasted for 3 months, the appellant was expected to perform the same task with no more than one instance where the log is not maintained accurately or within 4 working days. *Id*. at 53 of 98. The PIP was for 3 months whereas the appellant's performance standards were written for a year. The agency adapted the performance standard to the shorter time period and rounded to the nearest whole number of one instance. We fail to see how this required level of performance along with the same timeframe of 4 working days for maintaining the OSHA log differs materially from the "Success" level outlined in the appellant's performance standards.

¶10 The memorandum subsequent to the PIP further demonstrates that the agency did not notify the appellant during the PIP of the requirements for a "Needs Improvement" performance level and instead notified him of the requirements for a "Success" rating. *See id*. at 4-24 of 98. The proposing official stated that the appellant had raised his performance in the organizational support objective to the "Needs Improvement" level, but failed to raise the mission support objective above the "Fails" level. *Id*. at 5 of 98. Regarding the appellant's "Fails" rating for the mission support objective, the proposing official described several tasks that he assigned to the appellant and the errors he committed concerning those tasks. *Id*. at 11-22 of 98. For instance, the memorandum detailed an instance where the appellant completed an assignment with multiple technical errors, missed the established date for completing the assignment, and required excessive assistance. *Id*. at 11-13 of 98. The proposing official stated that successful performance in the critical element of mission

support required no more than three errors in the appellant's assigned duties, but that, based upon the cited examples, the appellant had more than three errors. *Id*. at 22-23 of 98. The appellant also had not met suspense dates. *Id*. at 22 of 98. The proposing official stated that the appellant was given numerous opportunities to perform at the "Fully Successful" level, but he instead demonstrated unacceptable performance. *Id*. at 23 of 98. As a result, he was assigned a "Fails" performance rating. *Id*.

¶11    The memorandum makes no mention of the standards for the "Needs Improvement" performance level. *Id*. at 11-12 of 98. As a specific example, the appellant's performance standards for the mission support objective stated, "No more than 10 times during the rating period is the task/project not completed on time . . . and/or returned because results/recommendations are based on faulty conclusions and/or because it was not fully coordinated prior to submission." *Id.* at 94 of 102. The memorandum is silent on the prorated number of times during the PIP that the appellant would have been permitted to untimely complete assignments as described above to perform at the "Needs Improvement" level. Consequently, we find that the memorandum subsequent to the PIP also failed to demonstrate that the agency cured its defective performance standards. *See Henderson*, 116 M.S.P.R. 96, ¶¶ 16, 18.

¶12    The proposing official's testimony further supports our finding that the appellant was not notified of valid performance standards. The proposing official testified that he originally gave the appellant a memorandum detailing what he would need to do to become fully successful. Hearing Compact Disc (HCD). The proposing official testified that it was his understanding, based upon his conversations with employees from human resources, that a PIP was an opportunity for the appellant to demonstrate that he could perform at the "Fully Successful" level. HCD. Based upon our consideration of the evidence, we find that the agency improperly failed to communicate to the appellant what he needed

to do to avoid a performance-based action. *See Van Prichard*, [117 M.S.P.R. 88](), ¶ 19.

¶13     Accordingly, we find that the agency neither developed valid performance standards nor cured defective performance standards by communicating the standards to the appellant. *See Henderson*, [116 M.S.P.R. 96](), ¶¶ 16, 18. Because the agency has not shown that its performance standards were valid, the appellant's removal cannot be sustained. *See Van Prichard*, [117 M.S.P.R. 88](), ¶ 24 (the Board will not consider charged performance deficiencies absent valid performance standards).[4]

Affirmative Defenses

¶14     On review, the appellant continues to assert the affirmative defenses of harmful procedural error and disability discrimination. PFR File, Tab 1. Regarding the appellant's assertions concerning harmful procedural error, because we do not sustain the agency's action, we find it unnecessary to address this affirmative defense as it is not outcome determinative. *See Taylor v. U.S. Postal Service*, [75 M.S.P.R. 322](), 328 (1997) (declining to address a harmful procedural error claim after finding that the agency failed to prove its charge).

¶15     Next, we find that the appellant failed to establish his affirmative defense of disability discrimination based upon the agency's alleged failure to reasonably accommodate him. The appellant must prove his affirmative defenses by preponderant evidence.[5]  [5 C.F.R. § 1201.56]()(b)(2)(i)(C). In order to establish

---

[4] The appellant initially appealed the denial of his within-grade increase (WIGI). IAF, Tab 1; *see* IAF, Tab 7, Subtab 4 at 28 of 136. However, after notifying the appellant of the requirements for establishing jurisdiction, the administrative judge severed the WIGI appeal from the removal appeal and dismissed the WIGI appeal for lack of jurisdiction. *Pace v. Department of the Army*, MSPB Docket No. CH-531D-14-0359-I-1, Initial Decision (July 15, 2014). The appellant did not file a petition for review challenging the dismissal of his WIGI appeal, and that matter therefore is not before us.

[5] A preponderance of the evidence is that "degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." [5 C.F.R. § 1201.4]()(q).

disability discrimination based upon a failure to accommodate, an employee must show that: (1) he is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) he is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014).

¶16   The administrative judge found that the appellant was provided all accommodations he requested prior to the PIP, and that, although the agency provided him with adaptive software and a tape recorder (that he had requested halfway through the PIP) after the PIP had concluded, his supervisor testified that even with these accommodations, the appellant's performance did not improve to an acceptable level. ID at 12-15. The administrative judge therefore found that the appellant was not a qualified individual with a disability under the law. ID at 15. On review, the appellant disagrees with the administrative judge's finding and asserts that the agency failed to accommodate him because it delayed in providing certain accommodations until after the PIP concluded. He also asserts that these accommodations would have allowed him to succeed during the PIP. PFR File, Tab 1 at 5-7. Assuming without deciding that the appellant is a qualified individual with a disability under 29 C.F.R. § 1630.2(g),(m), we find that he has not established that the agency failed to accommodate him.

¶17   The Board has held that an agency is entitled to a reasonable period of time between an employee's request for an accommodation and its decision concerning the provision of an accommodation. *McConnell v. Department of the Army*, 61 M.S.P.R. 163, 169 (1994). The appellant asserts that he requested certain devices, including a tape recorder and assistive software, but that these were not provided until approximately 3 months after his requests. PFR File, Tab 1 at 5-6. He also asserts that he had previously requested a tape recorder. *Id*. at 5. In his declaration, the proposing official stated that the appellant had informed him of his disability, but did not request any accommodation until after he was

placed on the PIP. IAF, Tab 7, Subtab 4 at 23 of 136. The proposing official also stated that when the appellant asked, after being placed on the PIP, if he could use a recording device as a form of assistive technology, the proposing official immediately gave the appellant a device from his office; the appellant was later provided with a more sophisticated device. *Id*. The proposing official further stated that he provided the appellant with extra guidance and feedback as compared to others in the appellant's position. *Id*. at 24-25 of 136; *see id.* at 23-24 of 98. Considering the delay in providing the appellant with the requested technology in the context of the other evidence, we find that the appellant has not shown that the agency failed to accommodate him within a reasonable amount of time. Therefore, we find that the appellant has not established his affirmative defense of disability discrimination based upon failure to accommodate.[6] *See generally White*, 120 M.S.P.R. 405, ¶¶ 14-15 (finding no failure to accommodate where the appellant did not provide sufficient information to support the requested accommodation in the form of a "hardship transfer" prior to a performance-based action).

¶18    We also find that the appellant failed to establish his affirmative defense of disparate treatment based upon disability.[7] The administrative judge, in applying the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), found that the appellant had not established disparate treatment based upon disability because she found that he was not treated less favorably, and in fact was even provided more leniency, than other employees. ID at 16-17. However, in *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶¶ 18–22

---

[6] We MODIFY the initial decision to the extent that it found that the appellant was not a qualified individual with a disability because we instead find that he failed to show that the agency did not reasonably accommodate him.

[7] The appellant's arguments on review regarding disability discrimination address only his reasonable accommodation claim. *See* PFR File, Tab 1. Although the appellant does not specifically challenge the administrative judge's findings regarding disparate treatment based on disability, we address that claim to apply the correct legal framework.

& n.4 (2013), the Board found that a mixed-motive analysis applies to claims of disparate treatment based on disability. Under a mixed-motive analysis, an employee is entitled to some relief if he proves that his disability was "a motivating factor" in the decision, "even though other factors also motivated the practice." *Id.*, ¶ 23 (citing 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(1)). An agency may limit the extent of the remedy if it demonstrates by clear and convincing evidence that it "would have taken the same action in the absence of the impermissible motivating factor." *Id.*, ¶¶ 23–25 (citing 42 U.S.C. § 2000e-5(g)(2)(B)). Because the record is fully developed on the appellant's affirmative defense, the Board can apply the mixed-motive analysis without remand.

¶19 Discrimination may be established by direct or circumstantial evidence. Direct evidence may be any statement made by an employer that (1) reflects directly the alleged discriminatory attitude, and (2) bears directly on the contested employment decision. *Arredondo v. U.S. Postal Service*, 85 M.S.P.R. 113, ¶ 13 (2000). In addition to direct evidence of discrimination, the Board also may consider circumstantial evidence in determining whether an appellant has met his burden. *Crump v. Department of Veterans Affairs*, 114 M.S.P.R. 224, ¶ 12 (2010). Such evidence may include:

> (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that employees similarly situated to the appellant have been better treated; and (3) evidence that the employer's stated reason for its actions is pretextual.

*Troupe v. May Department Stores Company*, 20 F.3d 734 (7th Cir. 1994).

¶20 The appellant stated that the proposing official and another agency employee made harassing comments towards him. IAF, Tab 1. The appellant cited a statement of a coworker that an agency employee (Ms. S.) would degrade the appellant to a greater degree than she did other employees and would make

derogatory comments. IAF, Tab 7, Subtab 4 at 42 of 136. He did not, however, elaborate as to what comments were made. Because the appellant has not established that the comments allegedly made by Ms. S bear directly on his removal, those comments do not constitute direct evidence of discrimination. *See Arredondo*, 85 M.S.P.R. 113, ¶ 13. As to the proposing official, the appellant indicated that he was responsive when he heard rumors that another co-worker bullied the appellant; the proposing official listened to the appellant's complaint concerning the situation and stated that he would talk to the employee. We therefore find that the appellant's bare allegations that the proposing official and coworkers were discriminating against him do not constitute direct evidence of discrimination. *See Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 32 (2007).

¶21    We also have considered circumstantial evidence in deciding whether the appellant's disability was a motivating factor in his removal. The appellant generally objected to the lack of feedback he received from the proposing official, stated that the proposing official failed to accommodate his disability, and disagreed with the proposing official's criticism of his work. IAF, Tab 7, Subtab 4 at 30-43 of 136. However, the appellant admitted in his testimony that the proposing official treated everyone in the office the same way. HCD. We find that the appellant has not shown that others were treated more favorably than him. We also have considered the evidence concerning Ms. S.'s alleged comments. *See id.* at 42 of 136. Nonetheless, we find, upon considering all of the evidence, that the appellant has not shown that his disability was a motivating factor in his removal. Accordingly, we agree with the administrative judge that the appellant failed to establish his affirmative defense of disparate treatment.[8]

---

[8] We MODIFY the initial decision to the extent that the administrative judge failed to apply the mixed-motive analysis.

**ORDER**

¶22    We ORDER the agency to reinstate the appellant and to restore the appellant effective February 4, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶23    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶24    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶25    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶26    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See*  42 U.S.C.  § 2000e5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:                              _____
                                           William D. Spencer
                                           Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST** <br><br> **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.